# CASES DETERMINED

IN THE

# SUPREME COURT of JUDICATURE

OF THE

# STATE OF NEW JERSEY.

## AT JUNE TERM, 1858.

---

## THE STATE *vs.* WILLIAM J. MOORE.

1. If an indictment for illegal voting, founded on the 50th section of the act to regulate elections, (*Nix. Dig.* 223) charge that the defendant did willfully and unlawfully *give in his vote*, it is equivalent to charging that he did willfully and unlawfully vote.

2. It is not necessary to charge, in an indictment for illegal voting, that the defendant *fraudulently* voted; but if the indictment is for illegally *offering* to vote, it must charge that the vote was fraudulently offered.

3. The indictment charged that the vote was given at an election held, pursuant to the statute in such case made and provided, for electors of president, &c., naming the officers voted for. *Held* that, as the act to regulate elections was the only statute in the state pursuant to which the election of those officers could be held, there was in substance an averment that the election was held under that act.

4. An indictment for illegal voting must specify the particular disability that disqualifies the defendant.

---

William J. Moore was indicted, by the grand jury of Camden county, for illegal voting at the November election in 1856. The cause was tried before the Oyer and

105

Terminer for that county, at May Term, 1857, and the jury returned a verdict of guilty against the defendant.

A motion being made by the defendant's counsel in arrest of judgment, upon the ground that the indictment was fatally defective, the Court of Oyer and Terminer ordered the case to be certified to this court for its advisory opinion.

The substance of the indictment and the points raised by the defendant's counsel sufficiently appear in the opinion delivered in this court.

Argued at February Term, 1858, before the CHIEF JUSTICE, and Justices ELMER, POTTS and HAINES.

*J. P. Stockton,* for the defendant.

*W. L. Dayton,* attorney-general, for the state.

The opinion of the court was delivered by

The CHIEF JUSTICE. This indictment charges that the defendant, at an election held pursuant to the statute for electors of president, &c., did willfully and unlawfully give in his vote for the officers aforesaid, being the officers to be chosen, he, the said William J. Moore, then and there not being duly qualified to vote at said election for said officers, and then and there well knowing himself not to be duly qualified to vote at said election for said officers, against the form of the statute," &c.

The indictment is founded on the 50th section of the act to regulate elections, (*Nix. Dig.* 223) which enacts as follows, viz.: "Any person who shall vote, or shall fraudulently offer to vote at any election held under this act, or at any township or ward election, who shall not have been a resident of this state for one year, and of the county in which he votes five months next before the election, or who at the time of the election is not twenty-one years of age, knowing that he is not twenty-one years of age, or

State v. Moore.

who is not a citizen of the United States, knowing that he is not such citizen, or who, by reason of any disability, is not duly qualified to vote at the place where and time when his vote is given or offered, knowing that he is not duly qualified, shall be deemed guilty of a misdemeanor," &c.

The offence created by the statute, and for which the defendant is indicted, may be defined to be, "voting at an election held under the act to regulate elections, by a person who, by reason of some disability, is not duly qualified to vote at such election, knowing that he is not duly qualified."

It is objected—first, that the indictment does not follow the words of the statute, nor charge the offence therein described. The charge is not in the language of the act, that the defendant did "*vote*," but that he did "willfully and unlawfully *give in his vote*." But voting and giving a vote are precisely synonymous terms. They are so used in the very section on which the indictment is founded. Its language is, "any person who shall *vote* or *offer to vote*, knowing that he is not duly qualified to vote at the place where and time when his *vote is given* or offered." Giving the vote is *voting, not offering to vote.* The indictment, therefore, is not open to the objection urged upon the argument, that it is equivocal, and may mean either the giving the vote into the ballot box, *i. e.*, voting, or giving it into the hands of the officer, *i. e.*, offering to vote.

Again, it is objected that the indictment does not charge that the defendant *fraudulently* voted. The statute does not require it. Its language is, any person who shall vote, or shall fraudulently offer to vote. The objection requires the statute to be read thus: any person who shall fraudulently vote or offer to vote. But such is neither the phraseology nor the intent of the statute. A person who *votes*, knowing that he is disqualified, acts, of necessity, in fraud of the act. But a person may *offer* to vote,

knowing that he is disqualified, in jest or banter, with no serious intention of voting, and therefore such act is not necessarily fraudulent or criminal.

It is further objected that the indictment does not charge that the vote was given at an election held under the act to regulate elections, which is an essential part of the description of the offence. The charge is, that the vote was given, "at an election held pursuant to the statute in such case made and provided, for electors of president and vice president of the United States; for a member of the house of representatives of the United States for the first district of said State of New Jersey; for a governor of said state; for a member of the general assembly for the third assembly district of said county; for a sheriff and three coroners for said county." There is but one statute in the state pursuant to which the election of these officers can be held, viz., the act to regulate elections. There is therefore, in substance, an averment that the election was held under that act. In this, and other particulars alluded to, the indictment lacks that technical precision and strict conformity to the phraseology of the statute constituting the offence, which is eminently desirable, but it is not thereby rendered fatally defective.

But the indictment is fatally defective in not specifying the particular disability which is relied on as a disqualification of the defendant as a voter. It lacks, in this particular, the first essential of a valid indictment, inasmuch as it does not apprise the defendant of the precise nature of the offence with which he is charged, so as to enable him to prepare his defence. It charges, indeed, that the defendant was not duly qualified to vote; but that is tantamount to charging that he labors under one or more of numerous disabilities imposed by the constitution and the law. Under what disability does he labor? *That* specific charge the state must establish upon the trial. *That* charge the defendant may repel by his evidence, and *that*, by every principle of good pleading, the defend-

State v. Moore.

ant is entitled to know from the face of the indictment itself. But how can he know from this indictment the particular charge upon which the state means to rely, or the evidence necessary to make good his defence? Under this indictment the state may prove that the defendant is not white, or that he is not a citizen of the United States, or not a resident of this state one year, or of the county in which his vote was cast five months before the election, or that he was a pauper, or a convict, or any other constitutional or legal disqualification. The defendant must come prepared to prove his color, his age, his citizenship, his residence, to rebut evidence of his being a pauper or a convict, or, if convicted, to prove a pardon. A charge so general and so indefinite is inconsistent with the well-settled rules of criminal pleading, and must, of necessity, embarrass, if not fatally prejudice the defendant in making his defence.

But, aside from the general rules of criminal pleading, it is clear that the statute itself indicates, and by implication at least, requires a more specific charge. It does not enact generally that if a person votes, not being duly qualified, that he is guilty of a misdemeanor. But the provision is that, if a person laboring under one of divers disabilities, some of which are particularly enumerated, votes, knowing of such disability, he shall be deemed guilty of a misdemeanor. Thus, if a person votes who, at the time of the election, is not twenty-one years of age, knowing that he is not twenty-one years of age, or who is not a citizen of the United States, knowing that he is not such citizen; or who, by reason of any other disability which disqualifies him from voting, knowing that he is not duly qualified, i. e., knowing of such disability, he is guilty of a misdemeanor. The provision of the statute is tantamount to an enactment that, if any person laboring under any disability which disqualifies him from voting, and knowing of such disability, shall vote, he shall be deemed guilty of a misdemeanor. The indictment

Vol. iii.                    G

must specify what the disability is under which the defendant labors.

In an information or indictment under the game laws of England, it has been uniformly held that it is not sufficient to aver that the person charged was not "duly qualified," or that he had not the legal qualifications for killing game; but every legal qualification must be specifically traversed. Thus, under the 22 and 23 *Car.* 2, *ch.* 25 § 2, it must be averred that the party complained of had not an estate of inheritance of £100 per annum, nor a leasehold estate for ninety-nine years of the yearly value of £150, nor the son and heir-apparent of an esquire, or person of higher degree, nor the owner and keeper of a park, &c. *The King* v. *Hill,* 2 *Ld. Ray.* 1415; *Rex* v. *Jarvis,* 1 *Burr.* 148, 154; *The King* v. *Wheatman, Dougl.* 331; *Cro. Circ. Comp.* 400.

The necessity for a specification under our statute is much greater. For, if a defendant in an indictment under the game laws shows that he possesses any one qualification, the existence of which must be within his own knowledge, his defence is complete, though he be destitute of every other qualification. He is able, therefore, to prepare his defence, however general may be the averment of disqualification. But, under the election law, if it be proved that the defendant labor under any one legal disability, he is guilty, though he possess every other qualification. Unless, therefore, the particular disability intended to be relied on be specified, the indictment furnishes the defendant no guide to the preparation of his defence.

The precedent in Wharton, from which the present indictment has been framed, affords no support to its validity. That indictment was framed upon the peculiar phraseology, and adopts the language of the Massachusetts statute, which is totally dissimilar to our own. Nor does it seem certain that it would be regarded as a valid indictment by the courts of that state. *Wharton's Prec.*

596; *Commonwealth* v. *Shaw,* 7 *Metc.* 52; *Commonwealth* v. *Bradford,* 9 *Metc.* 268; *Davis' Justice* 226.

However that may be, it is perfectly clear that under our statute the indictment is fatally defective.

The Court of Oyer and Terminer should be advised accordingly.

CITED *in State* v. *Tweed,* 3 *Dutch.* 111.